**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH DAVID,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 15 C 1645** |
| | ) | |
| **ILLINOIS STATE POLICE OFFICER** | ) | **Judge Ronald A. Guzmán** |
| **MARCUS NETTLES, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Plaintiff's motions in limine [124, 125] are granted in part and denied in part.

**STATEMENT**

Plaintiff's Motion to Amend the Pretrial Order to Add Assistant State's Attorney Thomas Cargie to the Witness List (Dkt. # 125)

Plaintiff seeks to add Attorney Cargie as a possible rebuttal witness to testimony by Deputy Niezabitowski. Specifically, Plaintiff states he and defense counsel were told by Cargie that Deputy Niezabitowski, an apparent witness to the relevant event, was unavailable to submit to a deposition for medical reasons. The Court recently ordered that Plaintiff be allowed to take Niezabitowski's deposition if she was going to testify at trial. At the deposition, Plaintiff states that Niezabitowski testified: (1) that she had previously spoken with Cargie about a deposition and told him she needed legal paperwork in order to sit for the deposition, (2) that Cargie never gave her information about answering written interrogatories in lieu of a deposition, and (3) that she never told anyone that she could not answer questions about the incident involving Nettles and David.

Under Fed. R. Civ. P. 16(e), "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). While the final pretrial order includes Deputy Niezabitowski as a "may call" witness for Defendants, Plaintiff included an objection based on the fact that Niezabitowski had not submitted to a deposition for medical reasons. As noted above, Plaintiff has since taken Niezabitowski's deposition.

Defendants indicated at the pretrial conference that if they "can get her into court," they are going to call Niezabitowski as a witness given that the incident report that she drafted

supports their version of events that David provoked the encounter with Nettles and used a racial epithet. (Pretrial Conf. Tr., Dkt. # 121, at 32-39.)

Because Niezabitowski was ultimately deposed, any testimony by her as to what she told or was told by ASA Cargie regarding her unavailability due to health concerns does not seem relevant to the issues in this case. Assuming that both parties were given incorrect or deceptive information about Niezabitowski's availability, the Court fails to see how that affects her testimony regarding what she observed on the day in question. If it turns out that ASA Cargie was deceptive, no inference could be drawn against either Plaintiff or Defendants. If Niezabitowski admits she misled both Plaintiff and Defendants about her availability, then at most, the issue of her availability would be tangentially relevant – an inference could be drawn about her willingness to testify – but the probative value of such evidence would be slight.

Plaintiff may certainly inquire into a witness's reasons for wanting or not wanting to testify, but to allow testimony from other witnesses on that issue would open the doors to satellite litigation regarding a relatively unimportant matter in the case. The defense would be entitled then to call rebuttal witnesses to point out that the Cook County State's Attorney's office, the Illinois Attorney General's Office, and the Cook County Sheriff are all separate entities with very different interests in this case and that Defendants had no way of influencing Niezabitowski's position in this matter. Defendants would likely also seek to educate the jury as to why the Cook County State's Attorney's Office would be representing Niezabitowski as a non-party in this litigation. In short, the result would prolong the proceedings by creating a trial within a trial on a matter of little probative value that would confuse the jury or at the very least distract the jury from the important factual issues in the case.

In oral argument, defense counsel raised the possibility that Niezabitowski may have told ASA Cargie that she could not recall any of the events at issue. If indeed she made such a statement, this would raise the issue of whether Niezabitowski is competent to testify. A simple *voir dire* proceeding before she is called to testify would resolve this issue. If she maintains she has no present memory, then she is not competent to testify and the question of the introduction of her report will once again need to be addressed. If she affirms that she does have a present recollection of the events, then she may proceed to testify. She may be cross examined as to whether she ever made such a statement and if she denies having made such a statement, assuming the proper foundation is laid, she may be impeached by proof of a prior inconsistent statement that conflicts with her trial testimony.

Accordingly, the motion is denied.

<u>Plaintiff's Motion in Limine for the Admission of Nettles' Acts of Dishonesty</u> (Dkt. # 124)

According to records tendered by Defendants to Plaintiff, Nettles was recently suspended from duty without pay for six violations of Illinois State Police ("ISP") Rules and Regulations based on his interference in a CPD investigation relating to the arrest of his girlfriend.

Federal Rule of Evidence 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1). Under this rule, Plaintiff will be permitted to inquire into Nettles' recent suspension as its basis appears to be acts of dishonesty that are probative of Nettles' character for truthfulness. Under this rule, however, extrinsic evidence of any such prior misconduct may not be introduced.

Although evidence of prior bad acts is inadmissible to prove a propensity to commit such acts, it is admissible for other purposes, including intent, opportunity, preparation, and plan. Fed. R. Evid. 404(b). As noted by the Seventh Circuit, "we routinely allow the introduction of prior bad acts for purposes other than proving propensity." *United States v. Rainone*, No. 14-3154, 2016 WL 953048, at \*6 (7th Cir. Mar. 14, 2016) (citing Fed. R. Evid. 404(b)(2)) ("[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). To be admissible, evidence of other acts must be "relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014) (en banc). "[T]he rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.* at 856 (citing *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013) ("When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked to draw from that evidence, and by what chain of logic, it will sometimes become clear ... that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense.")).

While Plaintiff argues in this case that Nettles' suspension and the facts underlying the suspension go to means and opportunity, plan and method, and motive and intent (*see* Pl.'s Mot., Dkt. # 124, at 7), the argument relies on a propensity inference: that Nettles' previous attempt to intervene in the criminal investigation of his girlfriend makes it more likely that he attempted in this case to "hide his criminal conduct and interfere with the CPD's investigation in this case." (*Id.*) Even assuming that the suspension is admissible under Rule 404(b), the Court still must engage in a Rule 403 analysis. As the Seventh Circuit has indicated, "[t]he court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *United States v. Stacy*, 769 F.3d 969, 974 (7th Cir. 2014). Here, that Nettles, an ISP Officer, had the opportunity or means to interfere with a CPD investigation, cover-up his own conduct and seek to punish (*i.e.*, maliciously prosecute) David is not a disputed issue in this case.

Further, the argument that the suspension shows plan or method is misplaced. Plaintiff's contention that the "multiple steps he took in the other [suspension] incident mirror those in this instance" is not compelling. As noted by the Seventh Circuit, "[p]attern evidence is propensity evidence, and it is inadmissible unless the pattern shows some meaningful specificity or other

feature that suggests identity or some other fact at issue." *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) (citing *United States v. Beasley*, 809 F.2d 1273 1278 (7th Cir. 1987) ("Unless something more than a pattern and temporal proximity is required, the fundamental rule is gone. This is why 'pattern' is not listed in Rule 404(b) as an exception."). Here, there is nothing specific or idiosyncratic about the way in which Nettles interfered in the two investigations that causes it to move beyond simple propensity evidence. The proposed prior bad acts themselves involve the false representation (lie) that he was conducting an investigation for ISP, as well as his attempt to hide videotaped evidence of the incident regarding his girlfriend and his threat to arrest a security guard with no valid basis. The case at bar involves allegations that Nettles attempted to protect himself, not his girlfriend, by falsifying, not hiding, evidence. In the instant case, there is no evidence that Nettles attempted to intimidate a witness or anyone else, nor is there any evidence that Nettles falsely claimed to be conducting an investigation on behalf of ISP, or that he threatened to arrest a witness without any legal justification. The only factor in common between the prior bad-act conduct and the present allegations is that they both involved dishonesty in the form of self-serving lies.

As to intent, "'[t]o meet the test of Rule 404(b), there must be a showing that an issue has been joined as to intent, or another of the 404(b) categories, discrete from a showing of mere propensity.'" *Miller*, 673 F.3d at 698-99 (citation omitted). "In every Rule 404(b) case relying on intent, the court (1) must consider the probative value of the prior act to prove present intent, and (2) must weigh that value against the tendency of the evidence to suggest unfairly a propensity to commit similar bad acts. The availability of precedent that balances the relevance of bad acts evidence and decides to admit it does not excuse prosecutors or courts from asking in each new case whether and how prior bad acts evidence might be relevant, probative, and fair." *Id.* at 699. Plaintiff has failed to demonstrate that present intent is a disputed issue in this case such that the prior bad acts evidence becomes probative of intent. Honesty and truthfulness are character traits. Evidence of Nettles' prior actions that show him being dishonest and untruthful is nothing more than propensity evidence. In looking to what inferences the jury is being asked to draw from the evidence that Nettles has previously lied and otherwise obstructed a CPD investigation of his girlfriend and by what chain of logic, it becomes clear that despite the label, the jury is essentially being asked to rely on the evidence as proof of Nettles' propensity to engage in self-serving lies. This is evidence of a character trait offered for the purpose of proving present conduct in conformity therewith and, as such, is inadmissible under Fed. R. Evid. 404(b).

In a footnote to his motion, Plaintiff complains that Defendants have not fully disclosed all of the documents regarding Nettles' disciplinary action, and "reserves the right to supplement or renew this motion upon receiving the complete records." On its face, this appears to be a discovery issue that should have been raised and resolved long ago. At any rate, the Court will not address an undeveloped argument.

To the extent that Defendants did not timely disclose documents related to the suspension or the underlying investigation pursuant to Plaintiff's discovery requests, including a March 10, 2015 letter from the ISP director informing Nettles of the status of the investigation which had

been initiated on September 19, 2014, Plaintiff suggests that admission of the suspension and the underlying documentation may be an appropriate sanction. *See* Fed. R. Civ. P. 37 ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:  (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).").  The Court, however, declines to admit the evidence as a discovery sanction, particularly in light of its ruling under Fed. R. Evid. 404(b) and 403.

For the reasons stated above, Plaintiff may, under Fed. R. Evid. 608(b), cross-examine Nettles about his suspension and the conduct underlying the suspension, but he cannot seek to admit the relevant documents into evidence.

**ENTER:  April 27, 2016**

**United States District Judge**